I think it is quite fitting that my first action as a Chief Judge will be to cede to one of my colleagues the right to preside. Judge Lin, would you please preside at this point because I would like to make a motion. First of all, I am delighted to be on the our new Chief Judge. I am the first panelized Chief Judge and at this point I would entertain your motion. Well, I would like to move the admission of Adam Eltuki, who is a member in good standing of the Bar of New York. Adam has served me magnificently and will, I am to the Federal Circuit Bar. I enthusiastically endorse. Chief Judge, your first act is unanimously approved. Oh, can we make that a matter of repetition? The motion is granted. Adam, welcome. If you will please face the clerk. You can now take the oath of office. I pledge allegiance to the flag of the United States of America and to the republic for which it stands, one nation under God, indivisible, with liberty and justice for all. I pledge allegiance to the Republic for In Muni Auction, the website had a space for you to enter bids. Isn't that kind of an implicit instruction as to how to carry out the invention? Your Honor, my answer is yes, but let me amplify that answer. Muni Auction has some language in it. It doesn't use the word continuum.  But there's a continuum. At one end, there is arms-length transaction involving cooperation. At the other end, there is direction and control. I suggest that it's a jury question as to which end of the spectrum we're on. It is not a bench question. It's a jury question. The question is, is there substantial evidence to support a verdict in Akamai's favor? And I suggest there is, because the degree of direction, the degree of control, it's as though Limelight was sitting over the shoulder of the content provider and saying, press this button, do this, do that. The direction was almost complete in that case, about every aspect of it. In the Limelight contract, whose responsibility was it to accomplish the tagging step? Under the Limelight contract, the ultimate actual physical event of tagging was the content provider. And the contract specified that it was the content provider's responsibility to do that. Here's what the contract says, Your Honor, at 17807. The customer shall provide company with all cooperation and information reasonably necessary for company to implement the CDS. Yeah, and that's in the paragraph, paragraph 2. That's customer responsibility. Customer responsibility. Right. But it's under, actually, Limelight directed and controlled that event. It gave the customer, the content provider, the tag. Well, on whose behalf is the tag added? The tag is, well, the tag is necessary. Without adding the tag, the system won't work. So the question is, on whose behalf? It's in order for the content provider to have access to this claimed invention. The content provider must perform that last step. And it's the content provider's discretion as to which objects to tag and whether to tag or not, correct? Once, the issue here is, given the situation where the invention is being used, because that's what we're talking about, is there direction and control where the invention is being used? And I submit that once a user, the ultimate user, wants to get content from a content provider, the content provider does not have any discretion as to whether or not, the question is tagging, and does not have any discretion. It has a contractual obligation to tag in the manner in which Limelight tells it it has to tag. So is this any difference of any relationship where a customer is required to create a username and password in order to use an online service? Is there any difference between that relationship and the one at issue here? It's different in this respect, Your Honor. Again, I go back to the continuum. The continuum says, are we at this end or at this end? I am saying the degree of direction, the degree of control, if you parse the thing, sort of like slicing a salami, if you slice the salami thin enough, it doesn't look like a salami anymore. And all I'm saying is, when you look at the whole picture, and you look at every step that is being performed, and you look at the involvement of Limelight in every step, you are all the way at the other end of the spectrum. You're not at the end of the spectrum where immunity options says it's not any good. You're at the end of the spectrum where there is direction, if not control, over exactly what the content provider is doing. Is there any dispute that the case would rise or fall on this issue? I mean, if we were to find that there is no joint infringement, then all of the other issues here, including the claim construction, fall, correct? Only as to the 703 patent, Your Honor. Aren't the other patents implicated as well? No, they're not. Because it's just the involvement is simply in the preamble. It's not a separate step in question. They do not have this joint invention issue. And there's no dispute about that. The 645 patent and the 413 patent do not have that issue. So let me go on to the 645 patent. There are two issues I need to deal with. One is the 645 patent, claim one, both issues involve claim one. And the issue is whether or not the word alphanumeric string includes the original URL. And I submit that the district court's finding that it does is inconsistent with the claims. It's inconsistent with the spec. It's inconsistent. How is it inconsistent with the spec, which seems to use that as the one way, the one, in fact, it describes it as the invention in several places. Because the spec says at page 257, column 12, lines 47 to 49, the name of the original server preferably is included as part of the URL. Preferably. That's one, but there's other instances where it says the invention and then shows the URL. Your Honor, the word preferably appears throughout the spec. I think I counted five, six, seven times where the word preferably is used. When a spec says the invention is and then it says preferably it's done this way, I think that makes clear that it's not restricted to the one way. But moreover, during the prosecution history, they characterized, the applicant characterized the alphanumeric string not to include the URL. Then look at column 6, so lines 50 and column 7. According to the invention, the embedded object URL, according to the present invention, a virtual host name is prepended into the URL. I'm kind of lifting those. This is column 6, Your Honor. Well, column 6, 54 through 57, and column 7, 36 through 38. Both of those refer to the invention as the embedded object URL. Can you tell me what lines you're looking at? 54 through, on column 6, lines 54 through 57, and then on column 7, 36 through 38. Well, on column 6, the word preferably in the exact part that you're reading is immediately followed by two references to preferably. And the word preferably is all through here. I think you have to read the word the invention in the light of the statement that preferably it's done X. When something says preferably it's done, that obviously means to me that it can be done another way. And that's consistent with the prosecution history, where they characterized the strings without the full URL as… If you don't have the URL for the embedded object, how does a content provider obtain the embedded object? You can replace the object. You can replace the host name in the URL with the virtual host name. That's one way to do it. That's the simplest way to do it. And, in fact, Limelight doesn't use the whole URL. Can I just take you back to your answer to the Chief Judge's question on column 6 was that it uses the word preferably, but there's another reference in column 7, lines 36 through 39, which talks about according to the present invention, and there's no preferably limitation with respect to this particular sentence in the statute. Column 7? Column 7. Resulting at line 36. Thus, according to the present invention, a virtual server host name is prepended into the URL. I mean, there's no limitation here in terms of saying preferably. Column 7 is part of the preferred embodiment. The title on column 5 is detailed description of the preferred embodiment. So whenever they use the word invention, I think reading this spec as a whole, they're talking about the preferred embodiment, and the proof of the pudding is the language I read to you, and that is where it says preferably the host name, original host name is retained. But that means that the original host name doesn't need to be retained, and that's exactly how Limelight does it. It doesn't retain the original host name. Now, I would like to just briefly talk about the other issue. Again, it involves 6.4.5. Claim 1, selection by the alternate DNS. The question is whether or not the given name server, which is part of the alternate domain name system, must be selected by the alternative domain name system. There are multiple problems with that. The claim doesn't recite any selecting, importing at all. The claim only requires that the given name server be close to the client local name server. The district court's construction is inconsistent with the other claim language, which says that one or more DNS levels can be involved, and the district court's construction requires multiple DNS levels. While the district court came up with a proposal as to how it can be done with only one, the spec, the record, nothing in the record supports what the district court did, and moreover, I submit the district court system, our claim construction requires two servers, both in the alternate domain name system, and therefore our construction is inconsistent with the claims. I see I have... Thank you, Mr. Dunner. We'll restore your rebuttal time, and would you give Mr. McKinnon an extra four minutes, should he need to use it, and then we'll have equal time. Just one second, Mr. McKinnon, while we reset the time. Now you may proceed. Thank you, Your Honor. Please, the court. On the issue of joint infringement, Every time they exercise the option, there's infringement, right? Every time, if they decide they want to get information from a content provider, they then, by using the system, must do it according to the direction and control that they've received, right? They have to follow the instructions. I don't believe they do it under direction and control, Your Honor. And the reason is that there is no... The system only works if they do it as they're directed and controlled to do it. As in the Muni-Ossian case, Thompson had to follow the instructions if they were going to insert a bid properly. Now, there wasn't instructions. There was a gap where a bid could be put, but there was no instructions. Moreover, there was no contract. This has an actual contract. Is there any difference between direction and instruction? Maybe you can include that in... Okay, if I could address those questions. First of all, in Thompson, in Muni-Ossian, there were instructions. The court stated, in its opinion, that Thompson instructs bidders on use of the system. That means they instruct them, How are you going to place a bid? You have to do it the right way. You have to go into the system, enter the bid in the right place. You can't just go into any place and enter a bid. You have to do it according to the instructions. If you don't put in the bid according to the instructions, it won't work. The bidder had the discretion, Do I want to bid or not? Once it decided it was going to bid, it had to follow those instructions to make the bidding process work properly, just like here. If a... There was a contract here, too.  Both briefs to this court discussed the contract and said that the contract governed the party's relationship extensively. There's no doubt that there was a contract involving the bidders. The bidders had to pay if they were going to use the system, just like Limelight's customers have to pay if they're going to have Limelight deliver content on their behalf. In both instances, instructions had to be followed. It's no different than any other service provider. You have to... If the customer decides they want to use the system, then they have to follow the instructions. But Limelight cannot obligate the customer to tag any objects... What more could they do here to direct and control that's been done here? Well, in a situation involving a typical direction or control, let's say in Limelight's case, if Limelight runs name servers, which it does, and it said to another party, We want you to run these name servers for us. We'll issue a contract to you. You promise we'll operate the name servers for us. We will pay you some compensation for that. And in return, they do... That's just making it a subsidiary. That's the Limelight. No, not necessarily. It could be an independent contractor. Contracting out, doing it on their behalf. That's what... That sounds to me like that's making them Limelight again. If you're going to retain separate entities, there's almost nothing more you could do, right? There's a contract. There's directions. There's instructions. And they give you the option. If you don't want to get into the system, of course, you don't have to. But once you enter the system, you've got to follow every step we give you. I don't think it's entering the system. It's the user, the customer, has complete discretion as to whether or not they're going to modify a URL for a particular object. If they exercise the option to tag, they've got to infringe. Then they have to follow the instructions, just like a muni auction. They infringe, and every time. Just like a muni auction, if the bidders are going to use the system, they have to follow the instructions. And this court said those instructions are legally insufficient to establish discretionary control. I think the instructions were much more implicit in muni auctions. There was a blank, but they didn't tell you. The court said, specifically, at page 1330, that Thompson instructs bidders on use of the system. Now, with regard to the issue of the contract, and Judge Croso, I'll get back to the construction. How do you reconcile the difference between BMC, the prior case, and muni auctions? I don't believe there is a difference. The only thing that BMC said was, it mentioned the fact that there wasn't instructions and there wasn't a contract, but it didn't say what implication or what would have to be done in order for that to be controlled. The whole point of this relationship is to practice the patent for the mutual benefit of both parties. Am I wrong about that? I think the whole point of the relationship is to serve content on behalf of the customer. That's the purpose of it. What's going on here, LimeLight is working for the customer. The customer isn't working for LimeLight. So if they sued the customer then, then there wouldn't be a problem, right? Because you're saying that LimeLight is essentially a contractor for the customer. Well, I think it would be a different case. They'd have to run through those elements with the customer and say, does the customer have direction or control over each element? But certainly LimeLight doesn't have direction or control over all the elements, and certainly not what the customer does. If you look at this contract, because it's been mentioned a couple times, it uses very specific language. It says, customers shall be responsible for identifying, and then it continues. The same language is used in the next sentence of the contract with regard to other things. And it says, customers shall be solely responsible for operating this website, domain names, IP addresses, making sure it's a website up and running. Clearly this isn't a promise by the customer to LimeLight saying, we contractually promise we'll do all these things. Those are the customer's jobs. If the customer wants to do... Well, they do, with the caveat that if we want to use the system, we promise to do all of these things. If we want to use the system, it'll be our responsibility. It's our job, it's not your job. We couldn't sue the customer if they didn't modify a URL. We can't sue them. In fact, the record is undisputed that there are numerous customers where the customer switches back and forth between LimeLight and Akamai. If it were out of control, if LimeLight actually controlled the situation, we wouldn't have our customers directed traffic to other... Well, you could sue them if they refused to pan the contract and you said to them, well, you didn't pay up what you owed us, and they said, well, all they didn't fail to do was to follow your direction. If they didn't follow directions, the system won't work, but we can't require them to do it in the sense that they say, we don't want to tag this object. We can't say, that's breach of contract, you're required to tag. We cannot control them and direct them in that fashion. The question was asked, I think the question was, what's the difference between an instruction and a direction? Yeah, we just a minute ago both called them directions because I don't think there is a difference between directions. I think there is, an instruction is providing guidance essentially to someone who says, this is how to do it. For it to be a direction, there has to be some authority to enforce the instructions. It's not just really guidance. On every product you have at home, some of them say, these are the instructions, others say, these are the directions. Directions being, if you want to use it, this is what you're directed to do. Is there any difference between those two? I think under this test that the courts identified, yes, there is. Here's a distinction that I thought about. If this court told me to sit down, that is a direction. I have to do it, you have the authority over me to do it. If I'm walking down the street and someone says, sit down, that would be an instruction to me. I don't have to sit down. It's my own choice and discretion. So it's not the word that makes the difference, it's the relationship. Is that what you're arguing? Yes, absolutely. The relationship that gives authority to that statement. And here, although Limelight, and your example of a consumer product where there's directions, I mean, the seller of the product can't force you to follow those instructions. I can follow them if I want to. I don't have to. The same with Limelight's customers. They don't have to follow the instructions. If they want to make the service work properly, then they follow them. That's exactly what was going on in the Muni Auction case with the bidders. Well, the relationship here, though, may not necessarily be authoritative, but certainly the relationship is such that Limelight is specifying that to make the system work, this step, namely tagging, has to be performed and is providing the directions to its customer on how to do that. So, why is that any different than if the contract specified in a separate paragraph that, you know, Limelight hereby instructs and directs that in implementing this system, you will conduct the following tagging step on Limelight's behalf in order to provide this mutually beneficial service? I agree, Your Honor. There was a contractual provision that says I, the customer, promise to do this at Limelight's instruction on Limelight's behalf. I retain no discretion. It's all whenever you tell me to do it, I'll do it. But isn't that in effect what this arrangement is? No, I don't believe so. If they're going to use the service, they have to follow the instructions, right? Well, that's a big if. The if is an option when they're not using the service. It isn't a big if because the only time we're interested in whether they follow the method steps are if they are those instances when they do. And that's even set out in the contract, which was not the mutually option. There's no explicit instruction to follow each of the method steps. Whereas we have here each of the method steps specifically set out as what you must do to obtain our service. There are certain instructions. I agree with that. And directions. There are directions because the customer retains discretion. If it doesn't do it, LimeLight has no recourse. But that's just saying if they choose not to infringe, they're not infringers. I agree. But once they choose to enter the realm of the method steps, then they are directed exactly how to do it. But the key thing is they're choosing. They're the ones that are choosing whether or not they're going to do this. Not that we have no ability to require them to do that. It's just the bidders in Union  that are  whether or not they're going to do it. We're not doing it. If you do it, fine. If you don't do it, fine. We can't do anything about it. It's your choice throughout the whole process. Well, it seems to me the question is not whether that step is or is not performed and whether there is or is not infringement. The question is if the step that is specified in the claim is performed by the customer, whether that's attributable to limelight so that limelight would be deemed the infringer of the overall method. I think that's the same question that we had in Munio Auction. What about the jury? They weighed in on this and found against you. It did, but the Munio Auction decision was a question of law under those circumstances. There could not be joint infringement where you had instructions. This is heavily fact dependent too. I don't believe so. The fundamental issues are not disputed. The question of what the contract says is not disputed. It's undisputed. We've cited in the record testimony from both parties that these customers can decide which content delivery network they're going to send content to. We have customers under contract with us that are modifying all the information they receive. the information they receive. We have customers under